# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ROBERT DASCOLA,

       Plaintiff,

vs.                                        Case No. 2:14-cv-11296-LPZ-RSW
                                           Hon. Lawrence P. Zatkoff
                                           Magistrate Judge R. Steven Whalen

CITY OF ANN ARBOR and
JACQUELINE BEAUDRY,
ANN ARBOR CITY CLERK,

       Defendants.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on May 20, 2014

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on Plaintiff Robert Dascola's Amended Motion for

Summary Judgment [dkt 8][1] and the Motion to Dismiss filed by Defendants City of Ann Arbor

and Ann Arbor City Clerk Jacqueline Beaudry ("Defendants") [dkt 12].[2]  Also before the Court

is Plaintiff's Motion for Leave to file his First Amended Complaint [dkt 21].  All three motions

have been fully briefed.  The parties have indicated that oral argument is not necessary to resolve

---

[1] Plaintiff also filed a Motion for Summary Judgment [dkt 2].  As Plaintiff's Amended Motion for Summary Judgment supersedes his previous motion, the Court DENIES Plaintiff's original Motion for Summary Judgment [dkt 2] as MOOT.

[2] Defendants' Response to Plaintiff's Motion for Summary Judgment also indicates the Court should consider their Response as a Motion for Summary Judgment and request for declaratory judgment.  As Defendants have not filed a Motion for Summary Judgment in this matter, the Court is not required to consider their responsive pleadings as such a motion.  In the interest of justice, however, the Court's opinion and order does take into account the relief requested in Defendants' Response to Plaintiff's Motion for Summary Judgment.

the pending motions [dkt 24].  Further, the Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument.  Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted without oral argument.  For the following reasons, Plaintiff's motions are GRANTED and Defendants' motion is DENIED.

## II. BACKGROUND

A.  FACTUAL BACKGROUND

In the fall of 2014, the city of Ann Arbor, Michigan (the "City"), will hold elections to determine who will serve on the City Council.  Plaintiff Robert Dascola ("Plaintiff") wishes to serve as a member of the City Council.  The issue presented in this case is whether the requirements the City places on potential candidates for City Council—as set forth in the Ann Arbor City Charter (the "Charter")—may be validly enforced.

Section 12.2 of the Charter outlines the specific requirements a potential candidate for City Council must satisfy before he or she may run for the office.  Specifically, Section 12.2 states:

> Eligibility for City Office—General Qualifications
> SECTION 12.2 Except as otherwise provided in this charter, a person is eligible to hold a City office if the person has been a registered elector of the City, or of territory annexed to the City or both, and, in the case of a Council Member, a resident of the ward from which elected, for at least one year immediately preceding election or appointment.  This requirement may be waived as to appointive officers by resolution concurred in by not less than seven members of the Council.

In early March of 2014, Plaintiff obtained nominating petition forms from the City Clerk to run as a Democratic candidate for the position of City Council Member representing the City's Third Ward.  On March 12, 2014, Plaintiff received an e-mail from a member of the City Clerk's office, informing him that he was ineligible to run as a candidate for City Council in the fall 2014 elections.  Specifically, Plaintiff was told that he did not meet the durational residency requirement of Section 12.2 of the Charter.  Plaintiff was subsequently told that he also did not meet the voter registration requirement.[3]  Plaintiff's Amended Complaint and subsequent motions are based on the premise that these Charter requirements are unenforceable.

This is not the first time the provisions of Section 12.2 of the Charter have come before a judge.  Both parties agree that, in 1972, the constitutionality of the Charter's durational residency requirement and voter registration requirement was challenged in the United States District Court for the Eastern District of Michigan.  In a 1972 decision, United States District Court Judge Lawrence Gubow held that the durational residency requirement contained in Section 12.2 of the Charter was unconstitutional.  *Daniel J. Feld, et al v. City of Ann Arbor and Harold Summers*, File No. 37342 (E.D. Mich. 1972) ("*Feld*").  Judge Gubow's unpublished order explicitly stated:

> IT IS FURTHER ORDERED and declared that the portion of Section 12.2 of the [Charter] which requires all candidates for the office of councilman to have been residents of the ward from which they are elected for at least one year immediately preceding their election violates the equal protection clause of the 14th Amendment to the U.S. Constitution and is, therefore, unconstitutional and void.

---

[3] The parties have submitted conflicting facts as to whether Plaintiff actually meets the durational residency and voter registration requirements laid out in the Charter.  The Court will not address these facts further, as the Court's order renders inconsequential Plaintiff's ability to meet these requirements.

Likewise, in *Human Rights Party, et al v. City of Ann Arbor, et al*, File No. 37852 (E.D. Mich 1972) ("*Human Rights Party*"), United States District Court Judge Ralph Freeman held that the voter registration requirement contained in Section 12.2 of the Charter was unconstitutional. Judge Freeman's unpublished order also explicitly stated:

> IT IS FURTHER ORDERED and declared that the portion of Section 12.2 of the [Charter] which requires all candidates for the office of councilman to have been registered electors of the [City] for at least one year immediately preceding their election violates the equal protection clause of the Fourteenth Amendment to the U.S. Constitution and is, therefore, unconstitutional and void.

More recently, the validity of the Charter's durational residency requirement was considered by a state court judge. In the 2003 decision *Wojack v. City of Ann Arbor*, a Washtenaw County Circuit Court Judge granted the City's motion for declaratory judgment, finding that the Charter's durational residency requirement for City Council positions was constitutional.

Both parties agree that neither the *Feld* nor *Human Rights Party* decisions were appealed by the City. Further, neither party argues that the *Feld* and *Human Rights Party* decisions were ever explicitly overruled, vacated, or modified; indeed, these decisions have never been reviewed or reversed, and thus remain intact. Plaintiff alleges he decided to run for City Council with the knowledge that the durational residency requirement and voter registration requirement contained in the Charter were previously found unconstitutional and void. Plaintiff also alleges that the City informed him the provisions ruled on in *Feld* and *Human Rights Party* "are no longer void in light of subsequent changes in federal and Michigan jurisprudence."

### B.  Procedural Background

On March 28, 2014, Plaintiff filed his original Complaint in this Court, alleging the Defendants were improperly and illegally relying and acting upon provisions of Section 12.2 of the Charter.  On May 8, 2014, Plaintiff filed a motion for leave to file a first Amended Complaint.  Plaintiff's Amended Complaint clarifies that Plaintiff believes Defendants' attempts to enforce the previously voided provisions of Section 12.2 of the Charter violate his rights under the Equal Protection Clause of the 14th Amendment and his rights under 42 U.S.C. § 1983. Plaintiff seeks an order from this Court enjoining Defendants from enforcing the provisions of Section 12.2 of the Charter previously declared unconstitutional and void when determining Plaintiff's eligibility to run for City Council.  Plaintiff also seeks a writ of mandamus, requiring Defendant Beaudry to accept and process any nominating petitions submitted by Plaintiff and determine his eligibility without regard to the voided provisions of Section 12.2.  Finally, Plaintiff seeks costs and actual attorney fees incurred in bringing this action.

### III. LEGAL STANDARD

### A.  Fed. R. Civ. P. 56

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving

party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

Once the moving party has met its burden of production, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## B. FED. R. CIV. P. 12(b)(6)

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a party's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in that party's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). A party must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the party pleads factual

6

content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *Id.* at 556. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000).

## C. FED. R. CIV. P. 15

Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend shall be "freely give[n] . . . when justice so requires," but "that window of opportunity does not remain open forever." *Shane v. Bunzl Distribution USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008). "A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (*citing Ford v. Ford*, 371 U.S. 187 (1962)).

## IV. ANALYSIS

### A. ANCILLARY ISSUES

Although the parties' filings present numerous explanations and arguments, the Court has previously established the issue it finds controlling in the present action: If a law is found "unconstitutional and void" by a federal district court, must that law be officially re-enacted before it is enforced? Prior to addressing the central issue in this case, however, the Court first addresses several ancillary issues raised by both parties throughout the various filings.

At the outset, Defendants state in several filings that the durational residency requirement and voter registration requirement contained in Section 12.2 of the Charter are constitutional. Defendants argue that, since the *Feld* and *Human Rights Party* decisions were rendered, the

standard of review by which federal and state courts analyze such requirements have changed. Defendants argue these "changes in law" require the Court to uphold and declare constitutional all the provisions of Section 12.2.

Although Defendants spend a significant amount of time briefing this point, their focus is misplaced.  Deciding the constitutionality of the language contained in Section 12.2 of the Charter as if it had been passed today is not the question before the Court.  Indeed, Plaintiff does not argue in his Amended Complaint or his Amended Motion for Summary Judgment that these provisions, if passed today, would not survive constitutional analysis under the current standard of review.  Instead, Plaintiff asserts that, as the provisions contained in Section 12.2 of the Charter were found unconstitutional and void in two separate federal court decisions that remain intact, Defendants' enforcement of those provisions prior to re-enactment is unconstitutional.  Additionally, although Defendants seek a declaratory judgment that the *Feld* and *Human Rights Party* decisions are no longer binding law, the Court must first determine whether the City may, absent re-enactment, constitutionally enforce the provisions the *Feld* and *Human Rights Party* courts found unconstitutional and void.

Next, the Court finds that many of the parties' arguments have no bearing in determining the controlling issue of the case.  Specifically, the Court finds that issues of collateral estoppel and res judicata are not relevant to the resolution of this matter.  Likewise, the 2003 *Wojack* decision—a state court ruling on the constitutionality of the Charter provisions—has little bearing on the Court's current decision.  *See Brinkerhoff-Faris Trust & Sav. Co. v. Hill*, 281 U.S. 673, 681 (1930) ("the plaintiff's claim is one arising under the federal Constitution and, consequently, one on which the opinion of the state court is not final.").  The parties have failed to provide any binding authority indicating the *Wojack* decision should be viewed by this Court

8

as having binding precedential value. This lack of any binding precedential value from the *Wojack* decision also makes a "revival doctrine" argument—that a subsequent court ruling finding a state law constitutional "revives" a state law that was previously found unconstitutional—unconvincing.

As such, the Court will not address any of the aforementioned arguments in its continued analysis of the instant matter.

### B. A Law Found Unconstitutional must be Re-enacted before Enforcement

The Court now turns to the crux of the issue before it: If a law is found "unconstitutional and void" by a federal district court, must that law be officially re-enacted before it is enforced?

Plaintiff argues such re-enactment is required, asserting that laws found unconstitutional and void by a federal district court should be treated as if they never existed, or void *ab initio*. Plaintiff cites to the decisions of state courts throughout the country that assert this proposition. Additionally, Plaintiff argues that Defendants fail to provide any authority indicating a municipality may survey developments in the legal landscape and subsequently resume enforcement of a law previously found unconstitutional and void once that municipality concludes a fundamental change in the law has occurred.

Defendants present numerous arguments as to why re-enactment is not required to enforce a law previously found unconstitutional and void, most forcibly asserting that a federal court has no power to repeal Charter provisions and that prior federal court orders are only effective for the plaintiffs in those cases such that future plaintiffs may not rely on such orders. As is established below, the Court finds Defendants' arguments unconvincing.

### i. Legal Standard

As early the 19th century, the United States Supreme Court held that "[a]n unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby Cnty.,* 118 U.S. 425, 442 (1886). Additionally, the Sixth Circuit has found that "[i]f a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances." *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997). Although this decision did not deal directly with the issue of re-enactment, the Court finds persuasive the Sixth Circuit's reasoning behind preventing the enforcement of a facially unconstitutional law.

While the central issue in this case appears to be a matter of first impression in this circuit, at least five other circuits have addressed the issue currently before the Court. All five found that a provision struck down as unconstitutional should be handled as though it had never been enacted.[4] The Third Circuit decision in *Richardson v. United States* best illustrates this conclusion: "[m]ore importantly, if a law is unconstitutional, it is void and of no effect, and it cannot alter an otherwise valid obligation of a governmental officer to a citizen." Additionally, the Court has not found—nor has either party presented—a case from any circuit indicating that a law found unconstitutional and void that remains intact need not be re-enacted prior to enforcement.[5]

---

[4] *See Richardson v. United States*, 465 F.2d 844, 850 (3d Cir. 1972), *rev'd on other grounds*, 418 U.S. 166 (1974); *Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 401 (5th Cir. 2008); *United States v. Ross*, 9 F.3d 1182, 1193 fn. 10 (7th Cir. 1993) *cert. granted, judgment vacated on other grounds*, 511 U.S. 1124 (1994); *McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 744 (8th Cir. 2010); *Journigan v. Duffy*, 552 F.2d 283, 289 (9th Cir. 1977).
[5] Defendants rely on *Jawish v. Morlet*, a decision of the Municipal Court of Appeals for the District of Columbia, to support the premise that re-enactment is not required to restore a law previously found unconstitutional to its

Finally, the second edition of the American Jurisprudence Encyclopedia of United States law states that:

> The general rule is that an unconstitutional statute, whether federal or state, though having the form and name of law, is in reality no law but is wholly void and ineffective for any purpose. Since unconstitutionality dates from the time of its enactment and not merely from the date of the decision so branding it, an unconstitutional law, in legal contemplation, is as inoperative as if it had never been passed and never existed; that is, it is void ab initio. Such a statute leaves the question that it purports to settle just as it would be had the statute not been enacted . . . Since an unconstitutional law is void, it follows that generally the statute imposes no duties, confers no rights . . . and justifies no acts performed under it . . . Once a statute is determined to be unconstitutional, no private citizen or division of the state may take any further action pursuant to its provisions.

### ii. Analysis

While Plaintiff seeks to employ the rationale espoused by the Supreme Court and frequently applied by circuits throughout the country, Defendants ask this Court to adopt a different approach.  Defendants argue that a federal court has no power to "repeal" a Charter provision and that a prior Court ruling is binding only between the parties for the purposes of that case but does not alter the underlying statute.[6]  The Court finds neither of these arguments persuasive.

Defendants, relying on the Michigan Home Rules City Act, argue that the only way a provision of a municipal charter in Michigan may be amended or repealed is through a vote of

---

operative force.  The *Jawish* decision is based on the basic premise of the "revival doctrine" and thus is not applicable to the instant matter.

[6] Defendants raise two other arguments—citing a lack of authority in Michigan to support Plaintiff's argument and asserting collateral estoppel case law does not require re-enactment—that do not warrant extensive analysis.  The Court has already indicated that arguments regarding collateral estoppel are not material to the instant matter. Further, Defendants' argument referencing a lack of authority in Michigan case law is irrelevant to an interpretation of the U.S. Constitution by a federal court and is simply false.  *See Stanton v. Lloyd Hammond Produce Farms*, 400 Mich. 135, 144-45 (1977) ("It is a general rule of statutory interpretation that an unconstitutional statute is void ab initio . . . That this rule has been consistently followed in Michigan there can be no doubt.")

the residents.  Defendants assert that a federal court's finding that a charter provision conflicts with the U.S. Constitution only makes that charter provision "unenforceable," but does not strip that provision from the body of the charter.  Defendants seek to strengthen this argument by stating that Plaintiff confuses the term "void" with "repeal," referring to the Black's Law Dictionary definition of "repeal" as alleged proof that finding a law is "void" does not, in fact, repeal the law.  Defendants go so far as to claim the *Feld* and *Human Rights Party* decisions did not attempt to repeal the Charter provisions, as evidenced by the use of the word "void" instead of "repeal" in the court's orders.

Defendants offer absolutely no explanation as to why this Court should ignore Supreme Court precedent in favor of the Michigan Home Rules City Act.  Aside from the fact that the Michigan Home Rules City Act does not actually contain the argument Defendants purport it stands for, Defendants' assertion that "a court has no power to repeal Charter provisions in any manner" is supported by no case law, federal law, state law, or any other type of authority. More fundamentally, this argument is completely at odds with the system of checks and balances the federal system of governance is based on: federal (and state) courts are called on every day in this country to assess whether state and federal laws are in line with the requirements contained in the U.S. Constitution.  To suggest that federal courts do not possess this power is a serious misstatement of law.

Furthermore, Defendants' argument is premised on the flawed notion that the term "void" is materially different than "repeal," and that the only way a law may become unenforceable is if the law is officially "repealed." The 4th edition of Black's Law Dictionary[7] defines "void" as "[n]ull; ineffectual, nugatory; having no legal force or binding effect; unable, in law, to support

---

[7] The 4th edition of Black's Law Dictionary was the most up-to-date version available at the time the *Feld* and *Human Rights Party* decisions were made.

the purpose for which it was intended."  Regardless of the definition of "repeal," this definition of "void" demonstrates that the intent behind the *Feld* and *Human Rights Party* decisions was to give the Charter provisions "no legal force or binding effect."

Defendants' next argument is equally devoid of persuasive reasoning.  By arguing that prior federal court orders are only effective for the plaintiff(s) in those cases, Defendants are incorrectly attempting to apply a rule exclusively based on the Declaratory Judgment Act to all decisions made by federal courts.  Both cases Defendants use to support their argument explicitly deal with the Declaratory Judgment Act.  The *Feld* and *Human Rights Party* cases, however, give no indication whatsoever that the district courts considered the Declaratory Judgment Act in determining the Charter provisions at issue were unconstitutional and void.  Instead, the district court's opinion in *Human Rights Party* starts with the phrase "[t]his is an action under 28 U.S.C. § 1343(3) and (4)."  28 U.S.C. § 1343 is a federal law governing "civil rights and elective franchise."  As such, arguments based on the Declaratory Judgment Act have no bearing in this matter.

More importantly, the logic behind this argument is fatally flawed.[8]  Defendants are essentially arguing that any federal court ruling on constitutionality is confined only to the plaintiff(s) in that case.  This would mean that every single person affected by an unconstitutional law would have to challenge that law in federal court before a state or municipality would be compelled to stop enforcing that law against that individual.  Such an "individual challenge" requirement is completely inapposite to the basic principles of the federal judicial system: "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marybury v. Madison*, 5 U.S. 137, 177 (1803).  Defendants' argument seeks to

---

[8] The Court will not address the discrepancy between Defendants asking this Court for declaratory relief in finding Section 12.2 of the Charter constitutional while arguing a prior court ruling is binding only on the parties to that case but does not alter the underlying statute.

destroy this pillar of the legal system by confining this duty in constitutional cases to only those plaintiffs bringing suit while allowing municipalities to say "what the law is."

The Court is deeply troubled by this proposition. First, the Defendants fail to indicate any authority granting the City the power to say "what the law is." Further, the Defendants have provided no indication as to when exactly these voided provisions of the Charter "became" constitutional again. Additionally, the Defendants provided no evidence that notice as to "what the law is" was ever given to the public. In sum, the Defendants have provided absolutely no authority as to why this Court should simply abandon the basic principles of law that have formed the foundation of the United States legal structure for over two hundred years. The Court refuses to do so at this time.

For the reasons set forth above, the Court finds Plaintiff's argument persuasive.[9] As such, the Court holds that a law found "unconstitutional and void" by a federal district court may not be enforced until it is officially re-enacted, as that law is void *ab initio*. The Court thus holds that Defendants may not enforce against Plaintiff or any other person the provisions of Section 12.2 of the Charter found unconstitutional and void by the United States District Court for the Eastern District of Michigan in *Feld* and *Human Rights Party* prior to the City re-enacting the provisions therein.

C. RELIEF

Plaintiff's Amended Complaint asks the Court to permanently enjoin the Defendants from taking any action to enforce the provisions of Section 12.2 of the Charter held unconstitutional and void by the decisions in *Feld* and *Human Rights Party*. Additionally,

---

[9] The Court finds that, as this argument is contained in Plaintiff's Amended Complaint, the Amended Complaint is not futile, was not brought in bad faith or for dilatory purposes, and does not result in undue delay or prejudice to the opposing party. As such, the Court thus GRANTS Plaintiff's motion for leave to file First Amended Complaint [dkt 21].

14

Plaintiff seeks a writ of mandamus from this Court requiring Defendant Beaudry to accept and process any nominating petitions submitted by Plaintiff without regard to the voided provisions of Section 12.2.  Finally, the Plaintiff seeks costs and attorney fees pursuant to 42 U.S.C. § 1988.

### i. Legal Standard

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

28 U.S.C. § 1651 provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions, including writs in the nature of mandamus." *Haggard v. State of Tenn.*, 421 F.2d 1384, 1385 (6th Cir. 1970) (internal citations omitted).  "To insure that the writ of mandamus is issued only in such extraordinary circumstances, the party seeking the writ must satisfy two conditions . . . [f]irst, the party seeking the writ must have no other adequate means to attain the relief he desires . . . [s]econd, the [plaintiff] must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable." *In re Mechem*, 880 F.2d 872, 874 (6th Cir. 1989) (internal citations omitted).

Finally, although a federal court does not have the power to compel state officials to enforce state rights, it may "issue a writ of mandamus ordering a state official to enforce rights protected by federal law." *Hoffman v. Stump*, 97-2177, 1998 WL 869972, at *6 (6th Cir. Dec. 2,

1998); *see also CBS Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975), *State ex rel. Skaggs v. Brunner*, 588 F.Supp. 2d 828, 833, *Benjamin v. Malcolm*, 803 F.2d 46, 53–54 (2d Cir. 1986).

### ii. Analysis

The Court finds that Plaintiff satisfies the four-part test enumerated above for granting permanent injunctive relief. Plaintiff has provided compelling evidence that Defendants have used void provisions of the Charter in an attempt to preclude him from running for City Council. Further, remedies available at law would not compensate Plaintiff for his inability to run for City Council. Finally, as established above, the balance of hardships between the parties—and the public interest at large–warrant this Court enjoining Defendants from enforcing a void law when the City has failed to re-enact that law.

In the same vein, the Court finds that a writ of mandamus is warranted in this case. Although reserved for extraordinary circumstances, Plaintiff has demonstrated that he has no other adequate means to achieve the relief he desires. Plaintiff has also satisfied his burden of proving to this Court that his right to the issuance of the writ is clear and indisputable. Additionally, taking into consideration the Defendants' demonstrated inability (or unwillingness) to follow the explicit orders issued by federal courts with regards to the constitutionality of the provisions at issue, the Court finds that issuing a writ of mandamus is necessary to guarantee Plaintiff receives the relief to which he is entitled.

### V. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff's Amended Motion for Summary Judgment [dkt 8] is GRANTED and Defendants' Motion to Dismiss [dkt 12] is DENIED.

IT IS FURTHER ORDERED that Plaintiff is awarded all reasonable costs and attorney's fees.  Eastern District of Michigan Local Rules 54.1 and 54.1.2 require that Plaintiff file these motions, along with supporting authority, after entry of judgment.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
HON. LAWRENCE P. ZATKOFF
U.S. DISTRICT COURT

Dated:  May 20, 2014